UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JOHN A. ROSS, JR. | CIVIL ACTION |
| VERSUS | NO: 14-2054 |
| CAROLYN W. COLVIN, COMMISSIONER SOCIAL SECURITY ADMINISTRATION | SECTION: "E" (4) |

### REPORT AND RECOMMENDATION

**I.      Introduction**

This is an action for judicial review of a final decision of the Commissioner of Social Security pursuant to Title 42 of the United States Code § 405(g).  The Commissioner denied John A. Ross, Jr.'s claim for disability benefits and Supplemental Security Income Benefits under Title XVI of the Social Security Act and Title 42 United States Code § 1382c.

The matter was referred to the undersigned United States Magistrate Judge pursuant to Title 28 United States Code § 636(b) for the submission of Proposed Findings and Recommendations.

**II.     Factual and Procedural Summary**

John A. Ross, Jr. is a fifty-five-year-old male who has a tenth grade education and who worked as a warehouse worker, truck driver, and cleaner. (Tr. 55)   Ross first filed for disability benefits and Supplemental Security Income Benefits with the Social Security Administration on April 22, 2013. (Tr. 60)   He alleges that he worked a large truck delivery route until suffering an on the job fall from the back of a truck in December 2012. During the fall, he severely fractured his left wrist. (Tr. 82) He alleges disability due to low back and neck pain, left wrist pain, and migraines.

On September 24, 2013, the Social Security Administration ("SSA") found that Ross was not disabled. (Tr. 81)  On October 2, 2013, he filed a request for a hearing with an Administrative Law Judge ("ALJ") in the Social Security Administration's Office of Hearings and Appeals. (Tr. 85)  On February 13, 2014, Administrative Law Judge Benita Lobo conducted a hearing in which she reviewed the SSA's decision to deny Ross's application for disability benefits. Ross was represented by counsel. (Tr. 217-249) On May 21, 2014, the ALJ found that Ross was not disabled and not eligible for Supplemental Security Income Benefits. (Tr. 7-25)

On September 9, 2014, Ross filed the subject complaint seeking judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).[1]  Both parties have submitted their briefs for consideration by the Court.[2]

**III.   Issues**

    a. Whether the ALJ erred in failing to find Ross's musculoskeletal impairments were severe?
    b. Whether the ALJ's residual functional capacity findings are contrary to the substantive medical evidence of record?
    c. Whether the ALJ erred in considering plaintiff's depression under Listing Level 12.04?

**IV.   Standard of Review**

The role of this Court on judicial review under Title 42 U.S. C. § 405(g) is to determine whether there is substantial evidence in the record to support the determination of the fact finder. The Court may not re-weigh the evidence, try issues *de novo*, or substitute its judgement for that of the Secretary.  *Allen v. Schweitker,* 642 F.2d 799, 800 (5th Cir. 1981).  Review of the Secretary's decision is limited to "whether [her] findings are supported by substantial evidence

---

[1] Rec. Doc. No. 1.

[2] Rec. Doc. Nos. 10 and 12.

2

in the record and whether [she] applied the correct legal standards." *Emory v. Sullivan*, 936 F.2d 1092, 1093 (10th Cir. 1991).  An ALJ`s failure to apply the correct legal test constitutes a ground for reversal.  *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

Substantial evidence is more than a scintilla and less than a preponderance, and is considered relevant such that a reasonable mind might accept it as adequate to support a conclusion. *See Richardson v Perales*, 402 U.S. 389, 401 (1971).  It must do more than create a suspicion of the existence of the fact to be established, but no "substantial evidence" will be found where there is only a "conspicuous absence of credible choices" or "contrary medical evidence." *See Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973); *Hemphill v. Weinberger*, 483 F.2d 1137, 1138 (5th Cir. 1973).

The concept of disability is defined in the Social Security Act, as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted...for a constructive period of not less than twelve months." *See* 42 U.S.C. §§ 416(i)(1), 423 (d)(1)(A).  Section § 423(d)(3) of the Act further defines "physical or mental impairment" as "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. § 423(d)(3).

In determining whether a claimant is capable of engaging in any substantial gainful activity, the Secretary applies a five-step sequential evaluation process.  The Regulations governing the steps of this evaluation process are: (1) a claimant who is working and engaging in a substantial gainful activity will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe impairment"; (3) a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the

3

regulations will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that he has done in the past must be found "not disabled"; and (5) if a claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do any work that exists in the national economy. *See Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).

For mental impairments, an additional regulatory process supplements the five-step process detailed above. *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). It requires the hearing officer to record the pertinent signs, symptoms, findings, functional limitations and effects of treatment contained in the case record in order to determine if a mental impairment exists. *Id.* If an impairment is found the examiner must analyze whether certain medical findings relevant to a claimant's ability to work are present or absent. *Id.* The examiner must then rate the degree of functional loss resulting from the impairment in certain areas deemed essential for work.[3] *Id.* In determining whether a potential claimant is disabled, medical opinions from physicians and psychologists or other acceptable medical sources that reflect judgements about the nature and severity of a claimant's impairments will always be considered. 20 C.F.R. § 404.1527. If the record contains a medical opinion from a treating physician on the nature and severity of the claimant's impairments, the Commissioner's Regulations dictate that it must be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case

---

[3]20 C.F.R. § 404.1520a(c)-(d) provides for the examination of the degree of functional loss in four areas of function considered essential to work. These areas of activities are: daily living, social functioning concentration, persistence or pace, and deterioration, and episodes of decompensation. The degree of limitation in the first three functional areas are rated on a scale that ranges from no limitation to severe. The degree of limitation in the fourth functional area (episodes of decompensation), is rated on the following four-point scale: none, one or two, three, four or more. This information is detailed in the PRT form.

record." 20 C.F.R. § 1527(d)(2); *see also Frey v. Brown*, 816 F.2d 508, 513 (10th Cir. 1987).

The Regulations provide that the ALJ will make a determination based on the available evidence if all evidence received by the ALJ, including medical opinions, is consistent. 20 C.F.R. § 404.1527(c)(1). The Regulations also contain a general rule that greater weight should be given to the medical opinions of treating sources because they are "more likely to be the medical professionals most able to provide a detailed, longitudinal picture" of a claimant's medical impairments. 20 C.F.R. § 404.1527(d)(2). However, if a medical opinion issued by a treating physician is not given controlling weight because it is not well-supported or inconsistent with evidence in the record, then the Court will determine the appropriate weight to give the opinion based on a list of factors found in 20 C.F.R. § 404.1527(d).

In determining how much weight to give a treating physician's report, the ALJ must consider six enumerated factors: (1) the length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the relevant evidence in support of the medical opinion; (4) the consistency of the medical opinions reflected in the record as a whole; (5) whether the medical provider is a specialist in the area in which he renders his opinions; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d).

Based on the examination of the aforementioned factors, the ALJ must decide how much weight to give the treating physician's opinion. If the results from multiple factors suggest that the treating physician's opinion should be more closely considered despite its inconsistency or lack of support in the record, great weight should be given to it. *See Mosca v. Massanari*, 2002 WL 511522, 1 (D.Mass. 2002). In all situations, the Secretary must give specific, legitimate reasons if the ALJ's decision disregards the treating physician's opinion that a claimant is disabled. *See Williams v. Bowen*, 844 F.2d 748, 758 (10th Cir. 1988).

If the ALJ does not discuss or apply the factors listed in 20 C.F.R. § 404.1527(d), the Court may remand the case for re-evaluation if the ALJ assigned more weight to a non-treating source opinion than to the treating physician's medical opinion of the claimant. *Mosca,* WL 2002 at *1; *see also Baker v. Brown*, 886 F.2d 289, 291 (10th Cir. 1989). In situations where the treating physician's opinion is not given controlling weight, the ALJ must also explain the amount of weight he has assigned to the opinions of State agency medical and psychological consultants. 20 C.F.R. § 404.1527(d)(2).

V.  **Analysis**

  A.  **Whether the ALJ erred in failing to find that Ross's musculoskeletal impairments were not severe?**

Ross contends that the ALJ's decision that the musculoskeletal impairments he experienced were not severe was not based upon substantial evidence. He contends that the musculoskeletal impairments he experienced and limitations included low back and neck pain, upper extremity pain with manipulative limitations that significantly interfere with his daily activities. He contends that the ALJ's determination was based primarily on the absence of ongoing medical treatment and she discounted his testimony about the limitations he experienced rather than the documented medical evidence in the record including the physician's notes of the physical exam administered by Dr. Logan. As a result, Ross contends that the ALJ's decision is not based upon substantial evidence.

The Commissioner contends that the ALJ properly found that Ross's alleged back impairment was not severe. The Commissioner contends that Ross only presented evidence of a single instance of treatment of his back impairment rather than present evidence that the impairment either lasted or could be expected to last at least 12 months. Consequently, the ALJ's decision that Ross's musculoskeletal problem was not a severe impairment is based upon

6

substantial evidence.

At Step 3, the ALJ found that Ross had severe impairments consisting of depressive disorder with anxiety and substance (cannabis) dependence. He found that the medical evidence showed that Ross was seen by Dr. Logan on several occasions in 2011 and 2012 before the alleged April 9, 2013, onset date. (Tr. 13) At that time, Ross was diagnosed with assessments of lumbar and cervical degenerative disc disease, lower back pain, cervicalgia and cervical radiculitis. (Tr 13) He went through the medicals thoroughly and then ultimately noted that after the alleged onset date Ross returned to Dr. Logan complaining of increased neck pain (level 9) with radiation in his back. He noted that Ross reported having a difficult time trying to maintain full time employment because he was having to work long hours, stand for prolonged periods, and performs lifting. (Tr. 13)

It is settled that the mere presence of an impairment does not necessarily establish a disability. *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992). An individual claiming disability benefits under the Act has the burden to prove that he suffers from a disability as defined by the Act. *See Newton*, 209 F.3d at 452*; Selders v. Sullivan,* 914 F.2d 614, 618 (5th Cir. 1990); *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *Cook v. Heckler,* 750 F.2d 391, 393 (5th Cir. 1985). A claimant is deemed disabled under the Act only if he demonstrates an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Shave v. Apfel*, 238 F.3d 592, 594 (5th Cir. 2001); *accord Newton*, 209 F.3d at 452; *Crowley v. Apfel,* 197 F.3d 194, 197–98 (5th Cir. 1999); *see also* 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" is defined as work activity involving significant physical or mental abilities for pay or profit. *See Newton,* 209 F.3d at 452–53; *see also* 20 C.F.R. § 404.1572(a)-(b). "[A]n impairment can be

considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Id.* at 341 (quoting *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir. 1984)); *see* Martin v. Heckler, 748 F.2d 1027, 1032 (5th Cir. 1984)*; Davis v. Heckler*, *748 F.2d 293, 296 (5th Cir.1984).*

In this case, only one instance of treatment during the relevant period for the alleged back impairment exists in the record. While Ross saw Dr. Logan on several occasions in 2011 and 2012 before the alleged onset date, after the alleged onset day he returned to Logan complaining of increased neck pain (level 9) with radiation in his back. The ALJ aptly noted these instances in the opinion in addition to the absence of subsequent evidence of treatment for his lumbar impairment. (Tr. 13) The ALJ further considered the diagnostic x-ray studies of both the lumbar and cervical spine, which were reported as normal in August 2013. Also of note is the fact that the x-ray results further indicated that there was normal alignment and curvature of the spine with no evidence of spondylosis or spondylolisthesis or evidence of fractures or osteophytes. (Tr. 14)

Even during the consultative physical examination by Dr. Faust, it was noted that while Ross had a wide gait, he was able to heel and toe walk, his neck flexion was 60 degrees, and his extension was 30 degrees with no par spinous muscle spasm and normal reflexes. (Tr. 15) Dr. Faust concluded that Ross was not limited in his ability to perform work related physical activities. As a result, the ALJ discounted Ross's subjective pain complaints, his use of pain medication which were deemed largely subjective, and found not sufficient to establish the presence of a severe spinal impairment or other musculoskeletal impairment during the relevant period. Considering the evidence of record and the absence of correlating diagnostic test results and only one day of treatment of the spine during the relevant period, the Court finds that the

ALJ's decision that Ross's musculoskeletal problems are not severe is based upon substantial evidence. (Tr. 15)

### B.    Whether the ALJ's residual functional capacity findings are supported by substantial evidence?

Ross alleges that the ALJ's finding that he would be capable of working at all exertional levels is not based upon substantial evidence. Ross contends that the non-examining state agency medical consultant concluded that Ross would be limited to light work activity but the ALJ rejected his opinion.  Ross contends that based upon the treatment records and testimony, he would be capable of no more than work at the light exertional level which would result in a finding disability under Grid Rule 202.01.

The Commissioner contends that substantial evidence supports the ALJ's RFC assessment.  The Commissioner contends while Ross contends that the ALJ should have included physical limitations attributable to a back impairment in the RFC assessment, the ALJ declined to address the limitations based upon the absence of treatment, the negative diagnostic studies, and Dr. Faust's consultative examination report.

The ALJ found that Ross has the residual functional capacity to perform a full range of work at all exertional levels but that there were some non-exertional limitations.  The ALJ found that Ross could perform work of a simple and routine nature involving only occasional interaction with the public. (Tr. 17)   He noted that in assessing the intensity, persistence or functionally limiting effects of pain that he was required to make a credibility assessment based upon the entirety of the record.  The ALJ after detailing the testimony of Ross found that while his impairments could cause some of the alleged symptoms, Ross's statements concerning the variety, intensity, persistence and limiting effects of the symptoms were not found entirely credible.  In doing so, he pointed to the diagnostic evidence, physical examination and

noncompliance with medical recommendations along with ongoing use of marijuana. He also noted that the clinic records reflect positive response to treatment.

In considering the evidence, the Court notes that upon questioning, Ross testified during the hearing, that he could manage to work eight hours a day, five days a week, depending on the work and the person over him. Ross's contact with a doctor was only indicated on two occasions at the mental health clinic and a need for hospitalization has never been indicated. Additionally, the evidence shows that Dr. Arretteig saw Ross on one occasion and according to the ALJ, Dr. Arretteig's report did not contain evidence to support a more than mild limitation of mental functioning and further there was no evidence of durational requirement for severity. The Court therefore finds that the ALJ's RFC finding is based upon substantial evidence.

### C.   Whether the ALJ properly evaluated Ross's Mental Impairment at Step Three

Ross alleges that the ALJ erred during the consideration of his depression under listing Level 12.04. Ross contends that the ALJ's decision regarding his decision of depression/anxiety was somewhat confusing. Ross contends that if the ALJ's decision finding that his mental impairment was not severe enough is based upon the fact that Dr. Arretteig's opinion was conclusory and that he should have sought the consultative examiner's opinions. Ross contends that if the ALJ felt that Dr. Arretteig did not provide a sufficient explanation, he could have re-contacted her or ordered a psychological/psychiatric consultative evaluation. Ross contends that the failure to do so and the decision to substitute his own opinion constitute reversible error.

The Commissioner contends that the ALJ's decision was correct and based upon substantial evidence. The Commissioner also contends that even if the ALJ had adopted the check-box assessment of Dr. Arretteig, Ross would not have satisfied the subsection B criteria. The Commissioner contends that Dr. Arretteig had assessed a moderate limitation in

10

concentration and social function and no limitation in activities of daily living which would not have satisfied Listing level 12.04. The Commissioner further contends that the ALJ is not obligated to re-contact every physician whose conclusory opinion is not supported by the evidence.

The ALJ found that Ross had mild restriction in activities of daily living, moderate difficulties in the areas of social functioning and concentration, persistence or pace, and no episodes of decompensation. (Tr. 17)  The ALJ noted that Ross's records of mental health treatment which began in June 2013, focused largely on physical symptoms and feelings of anger related to the loss of income and threatened loss of home. (Tr. 17)   The ALJ found that Ross could take care of his own living needs and drives where he needs to go such as to the grocery store and appointments. She noted that although Ross had feelings of anger and tearfulness that have been indicated during mental health visits, his behavior and social interaction appear adequate and appropriate to the situation. (Tr. 17) The ALJ noted that during the hearing, Ross testified that he did not think that he had problems getting along with others or following instructions in a job setting. (Tr. 17)

The ALJ further noted that Dr. Arretteig indicated that there was good concentration and intact memory when she conducted a psychiatric examination in September 2013, which the ALJ concluded occurred during a high point in the claimant's mental health complaints. (Tr. 17) The ALJ noted that there have been no hospitalizations or other indications of decompensation during the period at issue. (Tr. 17)   The ALJ also indicated that she gave little weight to the functional assessment form completed by Dr. Arretteig in March 2014, which reflected marked impairment in several areas of mental function, because she only saw Ross on one occasion in September 2013 and did not provide sufficient explanation for the conclusions checked on the form. (Tr 17)

According to Listing 12.04, affective disorders are "characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation." 20 C.F.R. § 404 subpt. P, app. 1, sec. 12.04. The required level of severity for these disorders is met when the requirements in both A and B are satisfied or when the requirements in C are satisfied.

Section A of 12.04 provides that there must be medically documented persistence, either continuous or intermittent, of one of the following:

    a.    Anhedonia or pervasive loss of interest in almost all activities; or
    b.    Appetite disturbance with change in weight; or
    c.    Psychomotor agitation or retardation; or
    d.    Decreased energy; or
    e.    Sleep disturbance; or
    f.    Feelings of guilt or worthlessness; or
    g.    Difficulty concentrating or thinking; or
    h.    Thoughts of suicide; or
    i.    Hallucinations, delusions or paranoid thinking.

Section B provides that the disturbance of mood must have resulted in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration persistence or pace; or (4) repeated episodes of decompensation each of extended duration.

In considering the ALJ's decision to give little weight to the opinion of Dr. Arretteig, the Court finds that there is no prohibition to the ALJ relying on the treatment notes where the form was conclusory in nature without other supporting information. The Rosenblum Clinic records reflect that there was only one assessment by Dr. Arretteig and that it only contained checked marks conclusions that were not evident from the record or other records from the clinic. The ALJ further noted that even assuming more than mild limitation in mental functioning, there was no evidence that established the durational requirement for severity. In reviewing the evidence

submitted Dr. Arretteig's June 2013 form is the only evidence of an assessment regarding Ross's mental impairment. The Court also noted that further while he was assessed for treatment in June, he declined crisis intervention, referral or treatment. *Williams v. Colvin*, 575 Fed. Appx. 350 (5th Cir. 2014) As a result, the Court finds that the ALJ's decision to give little weight to the assessment of Dr. Arretteig is supported by substantial evidence.

Next, Ross complains that the ALJ should have contacted Dr. Arretteig if he felt that her explanation was conclusory. The regulation Ross cites does not require the ALJ to order more evidence where the record is sufficient to establish whether the claimant is disabled. The Commissioner is required to re-contact a medical source "[w]hen the evidence . . . from [the] treating physician or psychologist or other medical source is inadequate for [the Commissioner] to determine whether [the claimant is] disabled." 20 C.F.R. § 404.1512(e) (eff. Aug. 1, 2006, to June 12, 2011). Evidence from other treating sources can suffice to allow the ALJ to determine whether the claimant is disabled. *See Cornett,* 261 Fed. Appx. at 649 ("[T]he ALJ's need to contact a medical source arises only when the available evidence is inadequate to determine if there is a disability."); *Holifield v. Astrue,* 402 Fed. Appx. 24, 27 (5th Cir. 2010) ("Because the record in this case contains medical opinion evidence from treating physicians ... the ALJ had no duty to recontact [the doctor that submitted the unsubstantiated report]."). The ALJ is required to request more documentation only where there is no relevant evidence from other treating sources.

In considering the record before the Court, the Court finds that the ALJ did not have a duty to re-contact Dr. Arretteig because even if he had done so, there would still be an absence of longitudinal evidence of mental limitations as required by 12.04. There is no evidence that even if the ALJ had adduced evidence or the reasons for the findings that it would have altered the result. *See Castillo v. Barnhart*, 325 F.3d 550 (5th Cir. 2003).

13

Finally, Ross contends that the ALJ also had the ability to order a psychological/psychiatric consultative evaluation regarding his mental status. An ALJ may request a consultative examination "to secure needed medical evidence, such as clinical findings, laboratory tests, a diagnosis, or prognosis" if the record indicates "a change in [the claimant's] condition that is likely to affect [the claimant's] ability to work, but the current severity of [the claimant's] impairment is not established." 20 C.F.R. § 404.1519a(b)(4). However, if the record is sufficiently developed for the ALJ to make a determination, it is not necessary for the ALJ to order an additional consultative examination. *Good v. Astrue,* 240 Fed. Appx. 399, 403–404 (11th Cir. 2007).

The ALJ in reaching her conclusion detailed at great length the mental health treatment that Ross received. She noted that in December 2013 Ross reported that he was doing ok on the medication prescribed and that his neck interfered with his mood so he used marijuana to help him relax. After considering the treatment that Ross received, the ALJ found that he was mildly restricted in his activities of daily living, moderately restricted in social function and in concentration persistence or pace with no episodes of decompensation. Considering the treatment records, the ALJ concluded based on the record that Ross's mental impairment was not severe. The Court having reviewed the evidence of record which was sufficient, the ALJ was under no obligation to seek an additional medical opinion. The Court, therefore, finds that the ALJ's determination was supported by substantial evidence.

## VI. Recommendation

It is **RECOMMENDED** that the ALJ's decision denying John A. Ross Jr.'s claim for disability benefits and Supplemental Security Income Benefits be **AFFIRMED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being

served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United States Auto Ass`n*, 79 F. 3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 16th day of December 2015

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**